UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY KELLY,<br>　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL,<br>　　　　Defendant. | Case No. 16-cv-05071-JCS<br><br>**ORDER RE SUMMARY JUDGMENT MOTIONS**<br>Re: Dkt. Nos. 13, 18 |

## I.　INTRODUCTION

Plaintiff Sherry Kelly seeks review of the final decision of the Commissioner of Social Security Administration (the "Commissioner") denying her applications ("Applications") for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Presently before the Court are the parties' cross-motions for summary judgment. Kelly asks the Court to reverse the Commissioner's denial of her Applications and remand for award of benefits or, in the alternative, further proceedings. The Commissioner asks the Court to affirm its decision denying Kelly's Applications. For the reasons stated below, the Court DENIES Kelly's Motion for Summary Judgment, GRANTS the Commissioner's Motion for Summary Judgment, and affirms the decision of the Commissioner.

## II.　BACKGROUND

### A.　Procedural Background

Kelly filed the Applications on October 4, 2012, with an alleged onset date of August 7, 2011. Administrative Record ("AR") at 234. A hearing was conducted before Administrative Law Judge ("ALJ") Robert Erickson on January 27, 2015. *Id.* at 46-89. Kelly was represented at the hearing by attorney Jenna Able. *Id*. at 46. On February 24, 2015, the ALJ determined that

Kelly was not disabled. *Id*. at 38. Kelly requested review by the Commissioner's Appeals Council of that decision. *Id*.at 18. Her attorney submitted a brief in support of the appeal, along with new evidence from Kelly's treating physician. *Id*. at 7-11, 426-429 (5/5/15 Impairment Questionnaire by Dr. Keith Seidel). The Appeals Council made the additional evidence part of the record but denied the request for review. *Id.* at 1-3, 5.

**B.  The Five-Step Framework**

The Commissioner has established a sequential five-part evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). At Step One, the Commissioner considers whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If she is, the Commissioner finds that the claimant is not disabled, and the evaluation stops.

If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and considers whether the claimant has "a severe medically determinable physical or mental impairment," or combination of such impairments, which meets the duration requirement in 20 C.F.R. § 404.1509. An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, disability benefits are denied at this step.

If it is determined that one or more impairments are severe, the Commissioner will next perform Step Three of the analysis, comparing the medical severity of the claimant's impairments to a compiled listing of impairments that the Commissioner has found to be disabling ("the Listings"). 20 C.F.R. § 404.1520(a)(4)(iii). If one or a combination of the claimant's impairments meet or equal a listed impairment, the claimant is found to be disabled. For an impairment or combination of impairments to equal a Listing, the claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L.Ed. 2d 967 (1990), superseded by statute on other grounds as stated in *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013); see 20 C.F.R. § 416.926(a)-(b); SSR 83-19 (an impairment is "equivalent" to a listing only if a claimant's symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment

2

most like the claimant's impairment).

If the claimant does not establish that she meets or equals a Listing, the Commissioner proceeds to Step Four and considers the claimant's residual functional capacity ("RFC") in light of her impairments and whether she can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404.1560(b). If the claimant can still perform past relevant work, she is found not disabled. If the claimant cannot perform past relevant work, the Commissioner proceeds to the fifth and final step of the analysis. 20 C.F.R. § 404.1520(a)(4)(v).

At Step Five, the burden shifts to the Commissioner to show that the claimant, in light of her impairments, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. *Johnson v. Chater*, 108 F.3d 178, 180 (9th Cir. 1997). A claimant who is able to perform other jobs that are available in significant numbers in the national economy is not considered disabled, and will not receive disability benefits. 20 C.F.R. § 404.1520(f). Conversely, where there are no jobs available in significant numbers in the national economy that the claimant can perform, the claimant is found to be disabled. *Id.*

### C. The ALJ's Decision

In the ALJ's decision, he made the following findings under the five-step framework discussed above.

At Step One, the ALJ states both that Kelly "engaged in substantial gainful activity" after her alleged onset date, AR 26, and that "she has not engaged in substantial gainful activity since the alleged onset date." AR at 27. Neither party addresses this inconsistency. Nor does the Commissioner ask the Court to affirm her decision on the basis that Plaintiff engaged in substantial gainful activity after her alleged onset. Therefore, the Court assumes that this requirement has been satisfied.

At Step Two, the ALJ found that Kelly had the following severe impairments: scoliosis, obesity, hypertension, degenerative joint disease of the bilateral ankles, intellectual disability, affective/anxiety disorders, and alcohol abuse. AR at 27.

At Step Three, the ALJ concluded that Kelly does not have an impairments or combination of impairments that meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. In

3

reaching this conclusion, the ALJ addressed each of the impairments he found severe at Step Two. As relevant here, he found that "claimant's scoliosis . . . does not meet or medically equal listing 1.04 (entitled *Disorders of the Spine*) because there is no evidence that the claimant has any significant neurological deficits or inability to ambulate effectively." AR at 28. He went on to address Kelly's obesity, stating as follows:

> . . . although 20 C.F.R. Part 404, Subpart P, Appendix 1 does not provide a listing for obesity, SSR 02-1p states, "we will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." However, there is no evidence that the claimant's obesity affects any body system or mental functioning at a listing severity.

AR at 28-29.

At Step Four, the ALJ found that Kelly had the RFC to "perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she can lift/carry 10 pounds occasionally and zero to nine pounds frequently. She can stand/walk two hours in an eight-hour workday but no more than 10 minutes continuously. She can sit six hours in an eight-hour workday but no more than 30 minutes continuously. She would require a sit/stand option. She can never climb ladders, ropes, or scaffolding. She can occasionally climb stairs. She can occasionally balance, stoop, crawl, crouch or kneel. She is cognitively capable of simple, repetitive tasks. She should avoid concentrated exposure to unguarded heights or heavy machinery." AR at 31. The ALJ further found that Kelly could not perform any past relevant work. AR at 36.

At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Kelly could perform, including Sorter (DOT 739.687-182, sedentary exertion, SVP 2), Assembler (DOT 726.687-030, sedentary exertion, SVP 2), and Optical Goods Gauger (DOT 716.687-030, sedentary exertion, SVP 2). AR at 37.

### D. Contentions of the Parties

In her summary judgment motion, Kelly asserts two primary challenges to the ALJ's decision. First, she contends the decision is not supported by substantial evidence because: 1) the ALJ ignored an MRI showing multilevel degenerative disease with stenosis; and 2) he mischaracterized the record by omitting the word "severe" from his description of medical records

4

related to Kelly's scoliosis. Second, she contends the ALJ failed to consider the combined effects of Kelly's obesity with her other impairments as required under Social Security Ruling ("SSR") 02-1p, entitled "Evaluation of Obesity," at Step Three. Kelly does not challenge the ALJ's conclusions at Step Four regarding her RFC, including his finding that Kelly's "statement concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible . . . ." *See* AR at 33. Nor does she challenge the ALJ's conclusions at Step Five.

In her cross-motion, the Commissioner contends the ALJ's decision is supported by substantial evidence because the ALJ did, in fact, conclude that Kelly's scoliosis was a severe impairment. Moreover, the Commissioner asserts, the ALJ relied on medical records that recognized the degenerative nature of Kelly's scoliosis, indicating that he necessarily considered her degenerative back disease when he found that her scoliosis was severe. The Commissioner also rejects Kelly's assertion that the ALJ did not properly consider Kelly's obesity at Step Three.

Kelly did not file a Reply brief in response to the Commissioner's cross-motion.

## III. ANALYSIS

### A. Legal Standards Governing Review of Commissioner's Decision

District courts have jurisdiction to review the final decisions of the Commissioner and have the power to affirm, modify, or reverse the Commissioner's decisions, with or without remanding for further hearings. 42 U.S.C. § 405(g). When reviewing the Commissioner's decision, district courts must take as conclusive any of the Commissioner's factual findings that are supported by "substantial evidence." *Id*. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be based on the record as a whole. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence means "more than a mere scintilla," *id*., but "less than a preponderance." *Desrosiers v. Sec'y of Health & Human Servs*., 846 F.2d 573, 576 (9th Cir. 1988). However, even if the Commissioner's findings are supported by substantial evidence, the decision should be set aside if the Commissioner did not apply proper legal standards in weighing the evidence and reaching a decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). If a reviewing court identifies defects in the administrative proceeding or the Commissioner's conclusions, it may remand for further

proceedings or for a calculation of benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1019−21 (9th Cir. 2014).

### B. Whether ALJ's Decision Should be Reversed Because he Mischaracterized the Record as to Scoliosis and Ignored MRI Showing Degenerative Disease

The purpose of the Step Two inquiry, requiring that the claimant demonstrate that she has an impairment or combination of impairments that is severe, is to screen out groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id*. Once a claimant prevails at Step Two, "regardless of which condition is found to be severe, the Commissioner proceeds with the sequential evaluation, considering at each step *all* other alleged impairments and symptoms that may impact her ability to work." *Angeli v. Astrue*, No. CIVS06-2592 EFB, 2008 WL 802334, at *3 (E.D. Cal. Mar. 25, 2008) (citing 42 U.S.C. § 423(d)(2)(B) (emphasis added)). Thus, failure to find that an impairment is severe at Step Two does not necessarily constitute reversible error. *Id*. "Rather, the question is whether the ALJ properly considered the functional limitations of all medically determinable impairments at the remaining steps." *Id*. (citing *Smolen*, 80 F.3d at 1290) (holding that if one severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523)); *see also Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that where the ALJ was alleged to have erred at Step Two by failing to find that one of claimant's alleged impairments was severe, it could only have prejudiced the claimant "in step three (listing impairment determination) or step five (RFC)"; *Nicholson v. Colvin*, 106 F. Supp. 3d 1190, 1195 (D. Or. 2015) ("omissions at step two are often harmless error if step two is decided in plaintiff's favor").

Here, the ALJ did not mention the MRI in his decision and did not include degenerative disc disease as a severe impairment. To the extent that the ALJ's omission implies a finding that Kelly's degenerative disc disease is non-severe, that conclusion was not supported by substantial evidence because the MRI and the medical record as a whole shows that this condition was more than a "slight abnormality." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("An

6

impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'") (quoting SSR 85–28).

Nonetheless, because the ALJ found that Kelly had other severe impairments and proceeded beyond Step Two, this error is not reversible unless Kelly can demonstrate that the ALJ failed to consider her degenerative disc disease at later stages of his analysis. Plaintiff has not done so. Instead, the ALJ's findings indicate that he considered the degenerative nature of Kelly's back condition. *See* AR at 27 (citing AR 319 (1/18/12 "Radiologic Review" stating in Findings, "There is scoliosis of the lumbar spine, convex to the right measuring approximately 40 degrees. Multilevel degenerative disc narrowing is noted in all lumbar levels."); AR 330 (same); AR 386 (1/18/12 "Impression" of "Severe scoliosis with multilevel degenerative changes of the lumbar spine"). Therefore, the Court concludes that the ALJ's failure to identify degenerative disc disease as a severe impairment or to discuss the MRI results does not constitute reversible error.

The Court also rejects Kelly's argument that the ALJ's decision is not supported by substantial evidence because he dropped the word "severe" when he quoted notes in Kelly's medical records describing her scoliosis. Given that the ALJ expressly found that Kelly's scoliosis was, in fact, severe, this argument has no merit.

**C.     Whether the ALJ's Decision Should be Reversed Because he Did Not Properly Consider Kelly's Obesity at Step Three**

**1. Legal Standards Governing Consideration of Obesity at Step Three**

If a claimant's impairment does not meet the criteria specified in the listings, she is still disabled if the impairment *equals* a listed impairment. 20 C.F.R. § 404.1520(d). "If a claimant has more than one impairment, the Commissioner must determine 'whether the combination of [the] impairments is medically equal to any listed impairment.'" *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (quoting 20 C.F.R. § 404.1526(a)); *see also Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (noting that the claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects.").

The Ninth Circuit has held that "an ALJ must evaluate the relevant evidence before

7

concluding that a claimant's impairments do not meet or equal a listed impairment" and that a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Nonetheless, "as long as the ALJ's decision contains 'an adequate statement of the foundations on which the ultimate factual conclusions are based,' '[i]t is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments.'" *Huizar v. Astrue*, No. CV 11-7246-PLA, 2012 WL 3631526, at *9 (C.D. Cal. Aug. 23, 2012) (quoting *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200–01 (9th Cir.1990)); *see, e.g., Harris v. Astrue*, 2009 WL 801347*7 (N.D.Cal.) (finding that discussion and evaluation of evidence at Step Four supported ALJ's Step Three conclusion that impairments did not meet or equal Listing 1.04).

In SSR 02-1p, the Social Security Administration ("SSA") offered policy guidance regarding the evaluation of obesity in combination with other impairments at Step Three. It explained that in 1999, it removed obesity from the Listing of Impairments because "the criteria in [the former obesity listing] did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." SSR 02-1p. Nonetheless, obesity would still be considered at Step Three, the SSA explained, and to that end, the listings for the musculoskeletal, respiratory, and cardiovascular body systems were revised by adding paragraphs to the prefaces of those listings "that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems." *Id*.

In SSR 02-1p, the SSA described the evaluation of obesity at Step Three as follows:

> Obesity may be a factor in both "meets" and "equals" determinations. Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.
>
> . . .

> We may also find that obesity, by itself, is medically equivalent to a listed impairment . . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .
>
> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings.

*Id*. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

### 2. Musculoskeletal Listing

Section 1.0 of the Listings addresses impairments of the musculoskeletal system. Obesity is addressed in the preface of that section, which states as follows:

> Effects of obesity. Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 1.00(Q).

The preface also defines the phrase "inability to ambulate effectively" as used in the musculoskeletal listings:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper ex o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 1.00(B)(2)(b)(1).

Finally, Listing 1.04, which the ALJ expressly addressed in his decision, provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Section 1.04.[1]

### 3. Discussion

In his decision, the ALJ states at Step Three that "there is no evidence that the claimant's

---

[1] Listing 1.04 may also be met under Subsections A or B, but Plaintiff relies only on Subsection C and therefore the Court omits these sections here. *See* Plaintiff's Motion at 20.

obesity affects any body system or mental functioning at a listing severity." AR at 28-29. While this statement is conclusory, it does not require reversal so long as the ALJ has provided the "foundation" upon which this finding is based elsewhere in the decision. The Court concludes that he has met that requirement.

Kelly contends she meets listing 1.04 because her obesity and her degenerative disc disease make walking difficult, and because her "chronic pain in combination with morbid obesity significantly limits her ability to perform basic work activities, which include exertional and postural functions." Plaintiff's Motion at 19. She points to medical evidence in the record supporting both allegations. *See id.* at 20-21. In particular, she contends her "significant difficulty walking" was reported in nearly all of the treatment notes. *Id.* (citing AR at 321, 323, 366, 378, 415, 421). She also points to medical records documenting her consistent complaints of lower back pain. *Id.* at 21 (citing AR at 319, 321, 322, 323, 358, 365, 378, 415, 418). In addition, she points to medical records in which physicians linked her obesity to her other complaints. For example, she points to a comment by Dr. Lewis, a consultative examiner, that she could not perform tandem or toe-heel walking because of her obesity. *Id.* (citing AR at 350). Another physician opined that her lower back pain was likely due to excess weight. *Id.* (citing322).

The ALJ, however, addressed Kelly's allegations at Step Four of his analysis and found that they were not fully credible. AR at 33. He specifically acknowledged that Kelly's allegations found "some support in findings on physical and mental status examinations and test results" and cited to Kelly's medical records (including the observation by Dr. Lewis discussed above). AR at 35. He pointed to other evidence in the record, however, that indicated Kelly's limitations were less severe than she claimed. First, he cited "generally mild" findings on physical examinations, including "full motor strength in the iliopsas, quadricepts, hamstrings, gastroc soleu, and tibialis anterior," symmetric "range of motion of the lumbar spine . . . without pain at endpoints," negative straight leg raise tests, "no step-offs, crepitus, or tenderness over the midline, the cervical, thoracic, lumbar, or sacral spines," and "full range of motion of the lower extremity." *Id*. at 33. The ALJ also noted that Kelly reported she had no weakness in her lower extremities and was mobile "without an assistive device." AR at 33. Likewise, the ALJ

11

remarked, Dr. Lewis reported that Kelly did not use an assistive device at her appointment and that her gait was "slow but normal." AR at 33, 35.

The ALJ also relied on the opinions of several state agency doctors who found that Kelly was "functional in spite of her condition." *Id*. at 34. The ALJ pointed to the RFCs offered by Dr. Lewis and Dr. Pancho, both of whom found, among other things, that Kelly could stand and walk four hours out of an eight hour day, could lift up to 50 pounds occasionally and 25 pounds frequently. *Id*. He gave these opinions "some weight" but rejected these physicians' opinions as to Kelly's ability to lift and carry, finding that they had "not fully consider[ed] the claimant's subjective complaints arising out of her morbid obesity and scoliosis." *Id*. at 35. In fact, the RFC assigned by the ALJ found that Kelly's physical abilities were much more limited than the state agency doctors found.

The ALJ's discussion of the facts supporting the RFC also provide the foundation for his conclusion that none of Kelly's impairments combined with her obesity were severe enough to equal a Listing, including 1.04. Furthermore, Kelly has not challenged the ALJ's credibility finding. Consequently, the Court finds that the ALJ's decision sufficiently addressed Kelly's obesity in combination with her other impairments and was supported by substantial evidence.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Commissioner's Motion, Denies Plaintiff's Motion and affirms the decision of the Commissioner.

**IT IS SO ORDERED.**

Dated: March 22, 2018

JOSEPH C. SPERO
Chief Magistrate Judge